INSURANCE COMPANY OF NORTH AMERICA, Appellant, *v.* ANDREW C. GODWIN, Respondent. (Proceeding No. 1.)

In the Matter of COUNTRY-WIDE INSURANCE COMPANY, Appellant, *v.* ANDREW C. GODWIN, Respondent. (Proceeding No. 2.)

Fourth Department, December 5, 1974.

*Held, Telchin & Held* (*Bernard Meyerson* of counsel), for Country-Wide Insurance Company, appellant.

*Hancock, Estabrook, Ryan, Shove & Hust* (*Donald J. Kemple* of counsel), for Insurance Company of North America, appellant.

*Bond, Schoeneck & King* (*John M. Freyer* of counsel), for respondent.

WITMER, J. Petitioner-appellant Insurance Company of North America (INA) and petitioner-appellant Country-Wide Insurance Company (Country-Wide) brought these two separate proceedings against Andrew C. Godwin, respondent-respondent, for stays of arbitration which respondent had demanded under the uninsured motorists clauses in two policies of insurance issued by them respectively to him. Special Term denied their motions to stay arbitration, except to the extent that the matter of timely notice to petitioners of respondent's accident and claim was referred for resolution as a question of fact upon a trial. Petitioners appeal from such order only insofar as it denies their respective motions to stay arbitration.

On June 11, 1972 respondent Godwin, a resident of New York State, was operating his Honda motorcycle in Cleveland, Ohio when he was involved in a collision with a vehicle owned and operated by one James Luke, a resident of Ohio. Respondent had taken a policy of casualty insurance on his motorcycle with petitioner Country-Wide. At that time respondent also owned a Mercedes-Benz automobile on which he had taken out a policy of casualty insurance with petitioner INA. Country-Wide's policy contained the provision that its uninsured motorists clause applied only to accidents occurring within the State of New York.

In its application to stay arbitration INA urges several points, to wit, (1) that respondent had presented insufficient evidence that Luke was uninsured, and the court erred in denying a stay without a trial of that issue, (2) that INA's policy excludes coverage to respondent while operating an owned motor vehicle not insured by INA, and (3) that Country-Wide's territorial

exclusion of liability to respondent was void as against public policy, and that since it insured respondent whose vehicle was involved in the accident, it was primarily liable and INA was only secondarily liable, that is, liable for excess coverage, if needed. In its motion to stay arbitration Country-Wide also asserts (1) that respondent had presented insufficient evidence that Luke was uninsured, and hence the court erred in denying a stay without a trial of that issue and (2) that because of the clause in its policy excluding liability in case of accident with an uninsured motorist outside of New York State, respondent's claim against it is without merit as a matter of law.

With respect to the sufficiency of the evidence that Luke, whose vehicle collided with respondent's motorcycle, was uninsured, it appears that respondent had the initial burden to present some evidence that Luke was uninsured (see *Matter of Visciano* [*MVAIC*], 38 A D 2d 815). The record shows that after the accident respondent promptly retained an attorney to represent him; that his attorney investigated the accident and James Luke and found that the State of Ohio did not then have a compulsory insurance law for motor vehicles. Respondent's attorney reported to him that Luke had no insurance against personal injury which he caused to others; that the attorney's information was based on (1) several efforts made by the attorney to contact Mr. Luke and any insurance carrier that he had, (2) a copy of a motor vehicle accident report filed by Mr. Luke with the Motor Vehicle Department of the State of Ohio, in which he left blank the line on which he was required to state the name of his insurance carrier, if any, and (3) a copy of a letter received by respondent's attorney from Motor Insurance Corporation in February, 1973 with respect to the accident, stating that Luke had an insurance policy with that company on his automobile, but the policy was limited to covering damage only to Luke's vehicle.

We agree with Special Term that the above evidence, though sparse, formed a sufficient basis to establish prima facie that Luke was uninsured insofar as respondent is concerned. The burden of establishing that a genuine issue of fact exists as to whether Luke was an insured person, therefore, was placed upon petitioners (*Matter of Highsmith* [*MVAIC*], 31 A D 2d 424, 424-425), and since petitioners offered no evidence whatever to show that Luke was an insured person, Special Term properly determined summarily that he was not (*Matter of MVAIC* [*Cuevas*], 38 A D 2d 813; *Matter of Kuhn* v. *MVAIC*, 31 A D 2d 707; and see *Matter of Highsmith* [*MVAIC*], *supra*).

INA's policy contains the exclusionary provision that it "does not apply under Uninsured Motorists Coverage; (a) to bodily injury to an Insured while occupying an automobile (other than an insured automobile [i.e., insured by INA]) owned by the named insured". It contends that such clause excludes respondent from coverage because he was operating his own motor vehicle (not insured by INA) at the time of the accident. Respondent argues that he was not occupying an *automobile* at the time of the accident, and so the exclusionary clause does not apply. Although section 601 of the Insurance Law provides that the words "motor vehicle" in the statute include "motorcycles", we are here interpreting a policy of insurance, and respondent is entitled to have it construed as a contract and not necessarily according to the statutory definition. This is especially so in the context of this case where INA is seeking to avoid "uninsured motorists" responsibility to a New York resident, and since the uninsured motorists provisions of the Insurance Law were enacted "to fill the gaps in the compulsory automobile insurance plan" (*Matter of Askey* [*General Acc. Fire & Life Assur. Corp.*], 30 A D 2d 632, affd. 24 N Y 2d 937). As in the insurance policy in *Askey*, INA's policy defines automobile in some detail to mean other four-wheeled vehicles, but makes no reference to motorcycles. Where an insurance policy is ambiguous or subject to more than one reasonable construction, the courts will construe it most favorably to the insured and most strictly against the insurer (*Sperling* v. *Great Amer. Ind. Co.*, 7 N Y 2d 442). We conclude, therefore, that this exclusionary clause does not apply to respondent and does not relieve INA from responsibility herein (*Matter of Askey* [*General Acc. Fire & Life Assur. Corp.*], *supra*).

Country-Wide's policy contains the provision with respect to uninsured motorists that it applies "only to accidents which occur within the State of New York". Since the accident occurred in Ohio, Country-Wide contends that it has no responsibility to respondent herein, and hence that Special Term erred in denying its motion to stay arbitration. Respondent argues that such provision is contrary to the policy of the State of New York as expressed in the compulsory insurance law and thus is a nullity. In reply, Country-Wide points out that its policy, containing such limited coverage provision, was approved by the Superintendent of Insurance of the State of New York as a permissible exclusion because a lesser premium (to wit, $1 less) was charged therefor.

The question whether such limitation in the policy is void as against public policy is not without difficulty, for it appears that two conflicting principles of law are involved, to wit, (1) the acknowledged right of the parties to a private contract to provide in express terms the extent of the obligations created thereby, including territorial limitations on liability (*Chesher* v. *United States Cas. Co.*, 303 N. Y. 589, 592; *Lavine* v. *Indemnity Ins. Co.*, 260 N. Y. 399, 407–409), and (2) the public policy declared in subdivision 2-a of section 167 of the Insurance Law in providing broad insurance coverage for members of the public injured by motor vehicles. Such section provides in part: "No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance and use of a motor vehicle by the insured shall be issued or delivered by any authorized insurer upon any motor vehicle then principally garaged or principally used in this state unless it contains a provision whereby the insurer agrees that it will pay to the insured * * * all sums, not exceeding a maximum amount or limit of ten thousand dollars * * * on account of injury to, or death of, one person, in any one accident * * *. Any such policy which does not contain the aforesaid provision shall be construed as if such condition were embodied therein." The impact of this latter principle of law or policy is particularly significant in this case inasmuch as Country-Wide is contending that its New York insured, the respondent, is not protected because this clause excludes coverage in the event the accident occurred with an uninsured motorist outside the State of New York.

Country-Wide urges that the statute applies only with respect to injuries "caused by accident occurring in this State". In *Farber* v. *Smolack* (20 N Y 2d 198) the court held that by use of the words "in this state" in the Vehicle and Traffic Law, the Legislature did not intend to restrain the application of the statute to accidents occurring in this State, but was using the words generally to mean "upon a public highway", and that where the most significant relationships are in New York, the New York law should be applied despite the occurrence of the accident in another State (pp. 203–204).

"Section 167 (subd. 2-a) expresses the public policy of this State that motorists should be protected against damages inflicted by a financially irresponsible party" (*Matter of Vanguard Ins. Co.*, 18 N Y 2d 376, 380–381). There is nothing in the section to suggest that the Legislature intended to permit insur-

ers to exclude coverage to its New York insureds in the event the motor vehicle accident occurred outside of New York State. If the insured vehicle was "principally garaged or principally used in this state", as respondent's motor vehicle admittedly was, the statute required that the policy be read to provide the compulsory insurance coverage. We so held in *Matter of Askey (General Acc. Fire and Life Assur. Corp.)* (30 A D 2d 632, 633, affd. 24 N Y 2d 937, *supra*) and this ruling has been followed in the Second Department (*Matter of Sentry Ins. Co. [Amsel]*, 43 A D 2d 729).

Country-Wide made this insurance policy more attractive to its customers by reducing the premium in the amount of $1 when the uninsured motorists clause excluded coverage for out-of-State accidents. The general right of parties to a contract to dictate its terms must be limited when the contract is a policy of casualty insurance required by law as a condition for licensing motor vehicles. In such situation the overriding public policy of the State for the protection of its residents from injury by financially irresponsible persons becomes paramount, and the policy must be "construed as if such condition [coverage wherever the accident occurs] were embodied therein" (Insurance Law, § 167, subd. 2-a). In *Simpson* v. *Loehmann* (21 N Y 2d 305, 313) the Court of Appeals wrote, "This court has on a number of occasions given effect to the strong State interest in facilitating recovery of persons injured in automobile accidents. The fact that the injury occurs outside of this State does not, of course, lessen that interest." We hold, therefore, that the provision in the uninsured motorists clause of Country-Wide's policy limiting coverage to accidents occurring in the State of New York is void and without legal effect. Although the public policy of New York for this construction might not be as strong in a case where claimant is a nonresident asserting his rights under the uninsured motorists clause of respondent's policy, we do not imply that in such case a different result should ensue.

The above determinations result in the conclusion that at the time of his accident respondent had uninsured motorists coverage under each of the above policies. Each of the policies contains the following provisions:

"With respect to bodily injury to an Insured while occupying an automobile not owned by the named insured, this insurance * * * shall apply only as excess insurance over any other similar insurance available to such Insured and applicable to such automobile as primary insurance, and this insurance shall

then apply only in the amount by which the limit of liability for this Coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the Insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

INA contends that since Country-Wide insured the vehicle which respondent was operating at the time of the accident, it is the primary insurer; that INA is only the insurer to the extent that Country-Wide's coverage is insufficient; and that since no more than $10,000 can be recovered under the uninsured motorists endorsement (which Country-Wide is liable to pay and, of course, can pay), arbitration against INA should be stayed. Under a literal reading of the two policies each insurer in this case is only responsible for excess coverage. In this situation the Court of Appeals has held (*Federal Ins. Co.* v. *Atlantic Nat. Ins. Co.*, 25 N Y 2d 71, 75–76) that "there can be no *excess* insurance absent a policy providing *primary* coverage and, in the absence of such other policy, each would be primary. To give effect to the excess clause in either of the policies would defeat the similar provision in the other and it follows, therefore, that the 'excess' clauses operate to cancel out each other, both coverages must be treated as primary and each company is obligated to share" the liability pro rata in accordance with the respective policy coverages. In *Federal Ins. Co. (supra)* the court rejected arguments similar to those made by INA here that because Country-Wide's policy specified respondent's motorcycle, that policy must bear the primary responsibility. This case is distinguishable from *Davis* v. *De Frank* (33 A D 2d 236, affd. 27 N Y 2d 924) and *Mills* v. *Liberty Mut. Ins. Co.* (36 A D 2d 445). In *Davis (supra)* this court, by then Presiding Justice GOLDMAN, distinguished *Federal Ins. Co. (supra)* for the reason that in *Davis* one insurer made its policy coverage "excess over other insurance", while the other insurer sought to avoid liability if there was other insurance, "primary or excess". The instant case, unlike *Davis*, presents precisely the same situation as was in *Federal Ins. Co.*, that is, "both policies had the same purpose

— making coverage excess — thus the problem of mutual repugnance * * * was presented '' (33 A D 2d, at p. 239). *Federal Ins. Co. (supra)* is, therefore, controlling. (*Pittsburgh Bridge & Iron Works* v. *Liberty Mut. Fire Ins. Co.*, 33 N Y 2d 439.)

For the reasons above stated the order of Special Term should be affirmed.

MARSH, P. J., CARDAMONE, SIMONS and MAHONEY, JJ., concur.

Order unanimously affirmed with costs.