Stewart F. Hancock, J.
This uninsured motorist arbitration proceeding involves the interpretation of the standard New York Automobile Accident Indemnification Endorsement (Endorsement), as found in three policies of insurance issued by two insurance companies. One policy was issued by the petitioner, Country-Wide Insurance Company (Country-Wide), to cover a motorcycle owned by Daniel Wagoner. The other two policies were issued by the respondent, Aetna Casualty and Surety Company (Aetna), to cover an automobile owned *977 by Daniel Wagoner and an automobile owned by Clifford Wagoner, Daniel’s father. Respondent Aetna has moved for a permanent stay of the proceeding as against it.
Country-Wide is seeking a two-thirds prorata contribution from respondent Aetna — one third for each Aetna policy — in connection with any award it may have to pay to Daniel Wagoner as a result of an accident which he had with an uninsured (hit-and-run) motorist on May 12, 1972 while driving his motorcycle insured by Country-Wide. Country-Wide bases its claim on the second paragraph of the "Other Insurance” clause of the Endorsement contained in the Aetna policies, which, if applicable, would make Aetna a coinsurer under each policy and thus liable for two -thirds of the loss. This clause, appearing in haec verba as part of the standard Endorsement as Condition No. 6 in all three policies is as follows:
"6. Other Insurance. With respect to bodily injury to an Insured while occupying an automobile not owned by the named Insured, this insurance shall apply only as excess insurance over any other similar insurance available to such Insured and applicable to such automobile as primary insurance, and this insurance shall apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
"Except as provided in the foregoing paragraph, if the Insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.” (Emphasis supplied.)
Each of the two Aetna policies presents a separate and different question:
(1) With respect to the policy on Daniel’s car, Aetna claims that the policy was effectively canceled by the named insured prior to the accident and that it has no obligation under the policy or the Endorsement. It is conceded that if Daniel’s policy were in effect, the second and not the first paragraph of Condition No. 6 would apply and that as to that policy Aetna *978 would be a coinsurer.[1] (See Public Serv. Mut Ins. Co. v Katcher, 36 NY2d 295.)
(2) Concerning the policy on Clifford Wagoner’s automobile, Aetna contends the first paragraph and not the second paragraph of Condition No. 6 applies and that it, therefore, is liable for excess coverage only, because the insured (Daniel Wagoner — a relative residing in the household of the named insured) was injured while occupying an automobile (Daniel’s motorcycle) not owned by the named insured (Clifford Wagoner).[2]
I
As to Aetna’s policy on Daniel’s car, the only issue is whether Daniel’s own efforts to terminate the coverage were effective. The procedure for termination of Aetna’s liability under the Endorsement is set forth in two interrelated provisions of the Endorsement and the policy, viz.: Condition No. 13 of the Endorsement which states: "Policy Period — Termination. This endorsement applies only to accidents which occur on and after the effective date hereof and during the policy period and shall terminate upon (1) termination of the policy of which it forms a part” and Condition No. 17 of the main policy entitled "Cancellation” which provides in part: "This policy may be cancelled by the Insured named in Item 1 of the declarations by mailing to Aetna Casualty written notice stating when thereafter the cancellation shall be effective.”
Because termination of the Endorsement is effected by terminating the policy, the narrow question presented is whether Daniel’s communications with the insurance agent, Robert Sleap, and with Aetna amounted to "written notice” so as to cancel the policy pursuant to Condition No. 17. On May 1, 1972 Daniel Wagoner called Robert Sleap (listed as an Aetna agent) and informed him that he wished to cancel the Aetna insurance on his 1962 Chevrolet which had been demol *979 ished earlier that morning. That day on the advice of Sleap he turned in his license plates and obtained a receipt for the surrender of his registration from the Motor Vehicle Bureau (Form FS-6) which he mailed to Sleap. On May 3, 1972, on behalf of Daniel Wagoner, Sleap mailed a copy of the FS-6 form to Aetna together with a written signed memorandum requesting cancellation of the policy as of May 1, 1972 and a return of the unused premium. In response to this notice, the company on May 11, 1972 issued its notice of cancellation canceling the policy as of May 1, 1972 as requested.
This court holds that, under these circumstances, the policy was effectively canceled prior to the accident of May 12, 1972. (Matter of Pagan v Motor Vehicle Acc. Ind. Corp, 43 AD2d 671.) If Sleap was an agent of Aetna the policy was canceled when he received the written FS-6 form notifying him that the registration had been canceled as of May 1, 1972. If he was acting as Wagoner’s agent, then the written request for cancellation mailed on behalf of Wagoner to Aetna would be sufficient. That the cancellation request was received and considered effective by Aetna is conclusively proven by the fact that it acted on the request and issued a notice of cancellation on May 11, 1972.
Country-Wide’s proposition that the Endorsement as contradistinguished from the policy is, for some reason, never subject to cancellation — even at the request of the insured— requires little discussion. The insured and the insurer have agreed that the Endorsement shall terminate upon termination of the policy "of which it forms a part” (Condition No. 13, Endorsement; emphasis supplied); and they have agreed on how the insured may cancel the policy (Condition No. 17, policy).
The authorities indicate that the Endorsement, just as any other contract, may be terminated or canceled. (30 NY Jur, Insurance, § 737; e.g., Matter of Pagan v Motor Vehicle Acc. Ind. Corp., 43 AD2d 671, supra.) Country-Wide has cited no decision to the contrary. The rationale of the disclaimer cases such as Matter of Knickerbocker Ins. Co. (Faison) (22 NY2d 554) does not apply. We are concerned here not with an attempted disclaimer of liability by the company for the purpose of defeating a claim of a third person based on a breach of a condition of the policy by the insured as in Glens Falls Ins. Co. v Colbert (44 AD2d 759). The question is simply *980 whether the parties canceled the contract in accordance with an agreed upon termination procedure.
This court holds, therefore, that Country-Wide is not entitled to contribution from Aetna on the basis of Daniel Wagoner’s Aetna policy.
II
We now examine Aetna’s policy on Clifford Wagoner’s car. Daniel, as a relative residing in Clifford’s household, was an "insured” under the New York Automobile Accident Indemnification Endorsement in Clifford’s policy. (Endorsement, Insuring Agreements, II. Definitions [a] Insured [1].) As an "insured” under Clifford’s endorsement at the time of the accident, Daniel was operating an "automobile” (assuming the motorcycle to be an "automobile”) not owned by the named insured (Clifford). Therefore, pursuant to the plain meaning of the first paragraph of Condition No. 6 of Clifford’s Aetna Endorsement, Aetna’s coverage on Daniel would be excess; and Country-Wide’s coverage would be primary under its Endorsement, inasmuch as it insured the motorcycle Daniel was driving. (Matter of Public Serv. Mut. Ins. Co. v Cross, 38 AD2d 930; Cohen v Liberty Mut. Ins. Co., 35 AD2d 719; Matter of Globe Ind. Co. [Baker], 22 AD2d 658.) Country-Wide contends, however, that Condition No. 6 in the Aetna Endorsement cannot be given its intended effect because it is repugnant to the identical Condition No. 6 in the Country-Wide Endorsement covering Daniel’s motorcycle and that, therefore, the coverage in both Endorsements must be considered primary. The argument is founded on a hollow premise — the Endorsements are not mutually repugnant. On the contrary, they operate perfectly together.
Condition No. 6 is intended to be applied only when the insured is not operating the automobile named in the insurance agreement. Here, because Daniel was operating the motorcycle named in the Country-Wide policy, the CountryWide insurance for him was primary and not under Condition No. 6. Inasmuch as the only Condition No. 6 that was operative was in the Aetna Endorsement, there could be no repugnancy. Clearly, the Endorsements are intended to be dovetailed in this fashion so as to give effect to the excess coverage provision in Condition No. 6 when the insured is driving a "nonowned” automobile. (See Matter of Public Serv. Mut. Ins. *981 Co. v Cross, supra; Cohen v Liberty Mut. Ins. Co., supra; Matter of Globe Ind. Co. [Baker], supra.)
An analysis of the two cases, relied on by Country-Wide, Federal Ins. Co. v Atlantic Nat. Ins. Co. (25 NY2d 71) and Insurance Co. of North Amer. v Godwin (46 AD2d 154), shows that neither can have any bearing on the present situation, where one Endorsement provides primary insurance on an automobile owned and operated by the named insured (Country-Wide’s coverage on Daniel’s motorcycle) and another Endorsement affords excess coverage on an automobile not ownedby the named insured. (Aetna’s policy on Clifford’s car.) In Federal Ins. Co. (supra), one policy covering the Hertz rented car provided only excess insurance, while the driver’s personal policy provided excess coverage on a nonowned automobile. Thus both policies were excess and, in fact, mutually repugnant. Conversely, in Insurance Co. of North Amer. v Godwin (supra), despite the contentions of petitioner to the contrary, the excess insurance provision of neither policy was involved. Insurance Company of North America’s insurance coverage was on the vehicle owned and operated by the named insured at the time of the accident and the other insurance company’s coverage was on another automobile owned by the named insured. Thus, the operative provision in the latter company’s uninsured motorist endorsement was the second paragraph of the "Other Insurance” clause furnishing coinsurance and not the first paragraph providing excess coverage. On an analysis of the facts in Godwin it appears that there was no incompatibility between excess insurance provisions as in Federal Ins. Co. (supra).[3] See discussion in Davis v De Frank (33 AD2d 236, 239-240, affd 27 NY2d 924) wherein the court found no repugnance between an excess provision in one policy and a provision in another policy avoiding liability if there was other insurance, primary or excess.
But Country-Wide argues that, in any event, the excess provision in Condition No. 6 of Aetna’s Endorsement could not apply because Daniel was driving his motorcycle and not "an *982 automobile not owned by the named Insured.” (Emphasis supplied.) The inconsistency of such contention on the part of the carrier which covers the motorcycle as an "automobile” in its "Combination Automobile Policy” is self-evident.[4] It is also contrary, in this court’s opinion, to reported decisions construing the word "automobile” in the Endorsement as meaning "motor vehicle” as defined in subdivision a of section 601 of the Insurance Law. (Matter of Askey [General Acc. Fire & Life Assur. Corp.], 30 AD2d 632, affd 24 NY2d 937; see, also, Matter of Sentry Ins. Co. [Amsel], 36 NY2d 291, 294; Public Serv. Mut. Ins. Co. v Katcher, 44 AD2d 795, revd on other grounds 36 NY2d 295, supra; Matter of Allcity Ins. Co. [Di Lorenzo], 33 AD2d 665; Early v Motor Vehicle Acc. Ind. Corp., 32 AD2d 1042.)
The Endorsement is required to be written into every policy of automobile insurance sold in this State and is designed to provide compensation for injuries caused by an uninsured motorist. The language of the Endorsement is not that of the insurers. It is precisely as prescribed by the Motor Vehicle Accident Indemnification Corporation (MVAIC) pursuant to subdivision 2-a of section 167 and subdivision (b) of section 606 of the Insurance Law and approved by the Superintendent of Insurance. Thus, even though two of these policies were written by one company on automobiles and one by a different company on a motorcycle, the wording of the Endorsement in each is identical. (See, also, 3 [Part Three] Bender’s Forms, Insurance, § 606.)
It has been uniformly held by the courts of this State that the term "uninsured automobile” in the Endorsement should be interpreted to mean "uninsured motor vehicle” in order to comply with the coverage mandated by subdivision 2-a of section 167. (Early v Motor Vehicle Acc. Ind. Corp., 32 AD2d 1042, supra; Matter of Askey [General Acc. Fire & Life Assur. Corp.], 30 AD2d 632, affd 24 NY2d 937, supra; Summit Ins. Co. of N. Y. v Beach, 80 Misc 2d 382.) The unqualified word "automobile” has also been given the expanded meaning of "motor vehicle”. (Public Serv. Mut. Ins. Co. v Katcher, 44 AD2d 795, revd on other grounds 36 NY2d 295, supra.) While "automobile” has been interpreted literally by some courts,[5] *983 the Court of Appeals has made it clear that its affirmance in Matter of Askey (supra), should be interpreted as a holding that the word "automobile” should be given the broader meaning of "motor vehicle” wherever it appears in the Endorsement. (Matter of Sentry Ins. Co. [Amsel], 36 NY2d 291, 294, supra.) Such an interpretation would avoid the confusion of construing "automobile” in two different ways within the Endorsement and the anomolous and unjust situations that could arise if Country-Wide’s reading of the Endorsement is adopted. For example, the Endorsement defines an insured as, among other things, "any other person while occupying * * * an automobile owned by the named insured” or "any other automobile while being operated by the named Insured”. (Endorsement, Insuring Agreements, II. Definitions [a] Insured [2]; emphasis supplied.) To adopt the literal meaning of the term "automobile” in applying this definition in CountryWide’s Endorsement would mean that a person (not otherwise qualified as an insured) riding as a passenger on Daniel’s motorcycle or on another motorcycle being operated by Daniel would not be covered for injuries caused by an uninsured motorist. Such a result could not have been intended.
This court holds, therefore, that Daniel Wagoner was operating "an automobile not owned by” Clifford Wagoner and that the insurance coverage afforded him as an insured under Clifford’s Aetna policy would be excess insurance under the first paragraph of Condition No. 6 of the Endorsement.
Country-Wide’s motion for a temporary stay of arbitration against it is denied; and a permanent stay of arbitration against the respondent, Aetna, as to both policies is granted.

. As to Daniel’s Aetna policy the motorcycle would be an automobile owned by the named insured as opposed to the Clifford policy where the motorcycle was not owned by the named insured.

. The motion here is, in part, a reargument by consent of the parties of a motion decided by this court in a written memorandum dated July 25, 1974 wherein it granted a stay of proceeding against Aetna on Clifford’s Aetna policy and directed a hearing on the question of the purported cancellation of Daniel’s Aetna policy. The reargument of the questions concerning Clifford’s policy was held on October 8, 1976 at the same time that proof was taken on the cancellation of Daniel’s policy.

. The relationship between the Endorsements in Godwin is similar to what it would have been between the Country-Wide Endorsement on Daniel’s motorcycle and Aetna’s Endorsement on Daniel’s car if that policy had not been canceled. It is conceded that Aetna’s coverage would be coinsurance because the motorcycle was owned by Daniel. There would be no incompatability between the Endorsements. (Cf. Davis v De Frank, 33 AD2d 236, affd 27 NY2d 924.)

. The Country-Wide policy is replete with references to Daniel’s motorcycle as the "described automobile”, "Car 1”, or "the automobile”.

. (Insurance Co. of North Amer. v Godwin, 46 AD2d 154; Summit Ins. Co. of N. Y. v Beach, 80 Misc 2d 382.) It should be noted that in Insurance Co. of North Amer. v
*983 Godwin (supra), where the accident occurred outside of the State of New York, the court was construing the word "automobile” in the main policy — not in the standard, MVAlC-mandated Endorsement, as here. The court recognizes this distinction. (Id., at p 157.) In addition, the court in Insurance Co. of North Amer. v Godwin (supra) was confronted with am exclusionary provision and applied the established rule where the policy is ambiguous it will be construed "most favorably to the insured and most strictly against the insurer (Sperling v. Great Amer. Ind. Co., 7 N Y 2d 442).” (Id.) The question here does not involve an exclusion from the coverage of the Aetna policy but what type of coverage applies — coinsurance or excess. The dispute is between two insurance companies. Regardless of the outcome, the maximum amount that the injured party may receive is $10,000. (See Matter of Public Serv. Mut. Ins. Co. v Cross, 38 AD2d 930; Cohen v Liberty Mut. Ins. Co., 35 AD2d 719; Matter of Globe Ind. Co. [Baker], 22 AD2d 658.)