In the Matter of COUNTRY-WIDE INSURANCE COMPANY, Appellant, v DANIEL C. WAGONER et al., Respondents.

Fourth Department, May 27, 1977

*Alderman, Alderman, Samuels & Schepp (Bernard Samuels* and *Eric Alderman* of counsel), for appellant.

*Coulter, Fraser, Carr, Ames & Bolton (J. Mark McCarthy* of counsel), for Aetna Casualty and Surety Company, respondent.

*David A. Bolm* for Daniel C. Wagoner, respondent.

CARDAMONE, J. P. This is a dispute between two insurance companies involving three insurance policies. One policy was issued by petitioner-appellant Country-Wide Insurance Company to cover a motorcycle owned by respondent insured Daniel Wagoner. The other two policies were issued by respondent Aetna Casualty and Surety Company to cover an automobile owned by Daniel Wagoner and an automobile owned by Clifford Wagoner, Daniel's father. This appeal involves the interpretation of the standard New York Automobile Accident Indemnification Endorsement (Endorsement) which is at-

tached to all three policies of insurance issued by the two insurance companies.

We are called upon to decide whether the insured effectively canceled his own liability insurance policy just prior to an accident in which he was struck and injured by a "hit and run" driver; and, if we conclude that the insured did so cancel his insurance policy, then, whether the Endorsement, required by subdivision 2-a of section 167 of the Insurance Law has viability independent of the insurance policy to which it is attached and survives such a cancellation, thereby affording coverage to the insured. Finally, we must decide whether the identical endorsement on the insured's father's policy provides coinsurance or merely excess insurance to the coverage provided in the insured's own indemnification endorsement.

### FACTS

On May 12, 1972 respondent Daniel Wagoner was injured in a "hit and run" accident while operating his 1971 Honda motorcycle. At that time he was the named insured in a liability insurance policy issued by Country-Wide on his Honda motorcycle. He was also the named insured in a policy of liability insurance issued to him by Aetna for 1962 Chevrolet automobile which he owned. Further, since Wagoner lived in the household of his parents, he was covered by the Aetna Endorsement attached to the liability policy issued to his father, Clifford Wagoner. All three of the above-described policies contained the following Endorsement required by section 167 of the New York Insurance Law which included the following—

"6. Other Insurance. With respect to bodily injury to an Insured while occupying an automobile not owned by the named Insured, this insurance shall apply only as excess insurance over any other similar insurance available to such Insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the Insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall

not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance".

In the early morning hours of May 1, 1972 11 days prior to the accident involving Daniel Wagoner's motorcycle, his 1962 Chevrolet was totally demolished when it was struck by another vehicle. At about 10:00 o'clock in the morning of this accident, Daniel Wagoner reported this accident to insurance agent Robert Sleap. In the record before us, Mr. Sleap describes himself as an Aetna agent. Daniel told him that he would have no more use for insurance on the Chevrolet and Sleap advised him that he should cancel his automobile registration and obtain a rebate on his insurance policy. Acting on this advice, Daniel removed his plates from his car, returned them to the State motor vehicle office, canceled his automobile registration and mailed the notice of cancellation to Sleap on the afternoon of May 1, 1972.

By memo dated May 3, 1972 and mailed to Aetna, Sleap directed Aetna to cancel Daniel Wagoner's insurance policy on his Chevrolet effective May 1, 1972 and to return the unearned premium. This advice was received in the Syracuse Aetna office on May 11, 1972 and a notice of cancellation dated May 11, 1972 and effective retroactively to May 1, 1972 was mailed to Daniel Wagoner.

Following the May 12, 1972 accident involving his motorcycle, Daniel Wagoner submitted uninsured motorist claims to both Country-Wide and Aetna with a demand for arbitration on Country-Wide. Special Term entertained an argument on the issue of the status of Country-Wide and Aetna as coinsurers under Clifford Wagoner's (Daniel's father) Aetna Endorsement and held a hearing on the issue of whether the Aetna policy issued to Daniel Wagoner on his Chevrolet had been canceled prior to the May 12, 1972 accident. Special Term determined that the policy Endorsement issued by Aetna to Clifford Wagoner applied only as excess insurance on Daniel's claim against Country-Wide and that the policy issued by Aetna to Daniel Wagoner had been canceled prior to the accident of May 12, 1972. Accordingly, Special Term granted a permanent stay of arbitration to Aetna for both policies issued by it and denied Country-Wide application for a stay of arbitration. It ordered Country-Wide and Daniel Wagoner to proceed to arbitration solely with respect to the controversy

between them pursuant to Daniel Wagoner's demand for arbitration. It is from this order that Country-Wide appeals.

### CANCELLATION

Country-Wide contends that the cancellation procedure contained in the contract between the insured and Aetna was not followed; the notice provision for cancellation of insurance contained in section 313 of the Vehicle and Traffic Law was not followed by Aetna; and the Endorsement has an existence independent of the main policy and that it must be separately and expressly canceled.

Aetna concedes that if the policy on Daniel Wagoner's Chevrolet is found to have been in effect on the date of the motorcycle accident, the second and not the first paragraph of Condition 6 of the Endorsement, above quoted, contained in the policy will apply and, as to that Endorsement, Aetna will be a coinsurer on Daniel's claim with Country-Wide.

The Aetna policy contains a provision permitting cancellation at the request of the insured. This is a common provision in insurance policies (30 NY Jur, Insurance, §§ 721, 737). The "cancellation" provision is contained in Condition 17 of the main policy which states, in part, as follows: "This policy may be cancelled by the Insured named in Item 1 of the declarations by *mailing* to the Aetna Casualty written *notice stating* when *thereafter* the cancellation shall be effective" (emphasis added). In order to effectuate a cancellation of the policy where the insured has a right to cancel it, the insured must make such a request to the insurer or its authorized agent *(Crown Point Iron Co. v Aetna Ins. Co.,* 127 NY 608). Once an unconditional request for cancellation is made by the insured, the policy is deemed, *ipso facto,* canceled upon receipt of the request, and it is not necessary for the insured to take any further action *(Gately-Haire Co. v Insurance Co. of Pa.,* 221 NY 589). There is no requirement that the unearned portion of the premium be returned by the insurer as a condition precedent to effective cancellation by the insured; but, rather, a request for cancellation by the insured, once received, effects the cancellation at once.

Although Mr. Sleap describes himself as an Aetna agent, there is no evidence in the record to support the conclusion that he was authorized by Aetna as an agent to receive and effect cancellation of the policy. He did forward Daniel Wagoner's request to cancel to Aetna's Syracuse office. The fact that

Aetna did not receive notice of the cancellation until May 11 would not prevent its retroactive cancellation of the policy as of May 1. This conclusion is not in conflict with the contractual requirement that the insured state "when *thereafter* the cancellation shall be effective" (emphasis supplied). The word "thereafter" in this kind of cancellation clause has been held only to mean that the policyholder may not select a cancellation date prior to the date on which notice is sent *(Nobile v Travelers Ind. Co.,* 4 NY2d 536). The facts in *Nobile* are similar in that there the insured had expressed a desire to cancel his insurance during a telephone conversation with an agent for the insurer. Acting upon the advice of the agent, the insured mailed the insurance policy to the agent. The policy was received by the agent on October 12 or 13, 1955. Although the letter accompanying the policy did not specify a date on which cancellation should be effective, the agent mailed a request to the insurer to cancel the policy, effective October 14, 1955. The insurer did not receive the request until October 17, 1955 but canceled the policy retroactive to October 14, 1975. The Court of Appeals held the insurer not to be liable to the insured for damages resulting from an accident occurring on October 17, 1975. In the present case Aetna received the notice of cancellation and acted on it on May 11, 1974, one day prior to the May 12 accident.

There remains, however, the question of whether respondent satisfied the cancellation requirement contained in Condition 17 of the policy by mailing *written notice* of his desire to cancel. Concededly, he mailed his notice of cancellation of registration form to the Aetna agent on the date he desired to cancel, but he did not enclose a letter in the mailing repeating his request to cancel as of May 1, 1972. The fact that Wagoner made an oral request for cancellation by telephone to his Aetna agent should not be deemed a failure to comply with the written notice requirement set forth in the cancellation provision of the insurance contract. The policy requirement that cancellation by the insured be in writing is for the benefit of the *insurer* and may be waived by it *(M & M Jewelry Creations v Hartford Fire Ins. Co.,* 26 AD2d 816).

Country-Wide's further contention that cancellation of the policy by Aetna was ineffective because of its failure to comply with the notice requirements of section 313 of the Vehicle and Traffic Law is unpersuasive since the statutory provisions for notice have no application where cancellation is effected by

the *insured* rather that the *insurer (Orefice v MVAIC,* 28 AD2d 854; *GEICO v Employers Commercial Ins. Co.,* 84 Misc 2d 946). Country-Wide's contention that the Endorsement is divisible from the main policy and must be separately and expressly canceled fails to consider the express language of Condition 13 of the Aetna Endorsement which states: "Policy Period—Termination. This endorsement applies only to accidents which occur on and after the effective date hereof and during the policy period and shall terminate upon (1) termination of the policy of which it forms a part".

We recognize that the uninsured motor vehicle endorsement has been held to remain viable apart from the main policy in certain circumstances, i.e., where liability under the main policy is disclaimed by the insurer *(Matter of Knickerbocker Ins. Co. v Faison,* 22 NY2d 554, cert den 393 US 1055).[1] The result in *Knickerbocker* does not compel the conclusion that an endorsement may never be canceled along with the main policy when the insurer acts upon a request for cancellation from the insured. Coterminous coverage under the main policy and the endorsement may both be terminated upon the terms agreed upon between the insured and the insurer. Here the agreement is that the Endorsement shall terminate upon termination of the policy "of which it forms a part". So long as such termination does not affect the rights of third persons whose status under that policy exists at the time the claim arises— and concededly it does not in the instant case—we can find no reason to refuse to give effect to the termination provisions of the policy.

### OTHER INSURANCE

Having found that Daniel Wagoner's Aetna policy and Endorsement on his 1962 Chevrolet automobile were effectively canceled, the remaining question is whether the Endorsement attached to Clifford Wagoner's policy under which Daniel is an insured, requires Aetna to be a coinsurer with Country-Wide or makes Aetna liable only for excess insurance. The threshold question that must be answered is

1. In *Matter of Knickerbocker,* the issue was whether an insurer's disclaimer following an accident for failure of the insured to give notice and co-operate in an investigation could operate to change the status of persons, *who were unquestionably "insured persons" at the time of the accident,* to "qualified persons." The Court of Appeals held that the disclaimer could not effect such a change in status.

whether the term "automobile" as contained in the "Other Insurance" clause in the Endorsement includes "motorcycle".

Country-Wide's policy issued to Daniel Wagoner insuring his motorcycle and Aetna's policy issued to Daniel's father, ·Clifford Wagoner, insuring Clifford's automobile both contained the "Other Insurance" *(infra)* clause under the uninsured motor vehicle endorsement, the first sentence of which states: "6. Other Insurance. With respect to bodily injury to an Insured while occupying an *automobile* not owned by the named Insured" (emphasis added). Special Term interpreted the word "automobile" to include motorcycle. Country-Wide argues that it does not. The significance, of course, is that if "automobile" includes motorcycle then the first paragraph of Condition 6 applies and Aetna is liable only for excess insurance. If it does not, then the second paragraph of Condition 6 is operative and Aetna is a coinsurer with Country-Wide.

The uninsured motor vehicle Endorsement, of which Condition 6 is a part, is required by law to be included in every automobile liability insurance contract issued in New York (Insurance Law, § 167, subd 2-a). The purpose of the endorsement is to extend insurance coverage to insured persons who are victims of automobile accidents involving a negligent, financially irresponsible motorist *(Ackerman v MVAIC,* 36 Misc 2d 1048, affd 18 AD2d 307). Although subdivision 2-a of section 167 mandates that the insurer agree to pay to the insured certain amounts "which the insured or his legal representative shall be entitled to recover as damages from an owner or operator of an *uninsured motor vehicle",* the Endorsement contained in the Aetna policy at issue here uses the term "uninsured automobile" in place of the statutory term "uninsured motor vehicle".[2] The word "automobile" is defined in the policy as a "four wheel land motor vehicle designed for use principally upon public roads". We have previously held that the term "automobile" when used in an

---

2. The term "uninsured *automobile"* may not be construed in a way so as to restrict the protection afforded a policy holder and since the statute uses the term "uninsured motor vehicle" (Insurance Law, § 167, subd 2-a), the term "uninsured automobile" when used in a policy must be given the broader definition of the statute *(Matter of Askey [General Acc. Fire & Life Assur. Corp.],* 30 AD2d 632, affd 24 NY2d 937). "Motor vehicle" as defined (Insurance Law, § 601, subd a) includes motorcycles. Thus, "uninsured automobile" by statute means "uninsured motor vehicle" and as such, includes uninsured motorcycles *(Matter of Askey, supra),* motor scooters *(Early v MVAIC,* 32 AD2d 1042) and uninsured motorized bikes *(Matter of Allcity Ins. Co. [Di Lorenzo],* 33 AD2d 665).

exclusionary clause of the Endorsement did not include motorcycles *(Insurance Co. of North Amer. v Godwin,* 46 AD2d 154).[3] In construing the word "automobile" we stated that in "interpreting a policy of insurance * * * respondent * * * [was] entitled to have it construed as a contract and not necessarily according to the statutory definition" *(Insurance Co. of North Amer. v Godwin, supra,* p 157). In short, contracts of insurance must be read to mean what they say. The use of the specific term "automobile" rather than the broader more inclusive term "motor vehicle" must be construed narrowly and as defined in the main Aetna policy. Such definition also applies to the Endorsement which "forms a part" of the policy.

We recognize that the term "automobile" to be construed in this Aetna Endorsement is contained in the "Conditions" and not the "Exclusions". But Condition 6 relating to "Other Insurance" is an attempt by Aetna to limit the amount that it will be required to pay merely to excess insurance. Courts cannot inject an interpretation into a policy or make a new contract for the protection of the insurance company. Where an insurer attempts to limit liability by use of an ambiguously worded term which is subject to more than one reasonable construction, the courts will construe it strictly against the insurer *(Sperling v Great Amer. Ind. Co.,* 7 NY2d 442, 447). Further, since the Aetna and Country-Wide policies contain identical "Other Insurance" clauses, they should be read in favor of coinsurance. In drafting the policies each company attempted to anticipate the covered risk, i.e., that an "insured" would suffer damages from an uninsured motorist. Each company collected a separate premium for this risk. The burden should be equal where the risk is the same and the carriers have both been compensated to carry it (8 Appleman, Insurance Law and Practice, § 4911, p 381). The essential policy considerations between these two insurance companies involve unusually complex actuarial considerations not properly suited for judicial resolution without being fully spelled out in the record. Absent such demonstration, we must give

---

3. Prior to our decison in *Godwin,* the Second Department, on nearly identical facts, had reached the opposite conclusion, holding that a motorcycle was included within the term "automobile" in an exclusionary clause *(Public Serv. Mut. Ins. Co. v Katcher,* 44 AD2d 795). The view that we took in *Godwin* is in accord with the majority view (Uninsured Motorist Provision—"Automobile", Ann 65 ALR3d 851, § 6 [a]). Subsequent to our decision in *Godwin,* however, the Court of Appeals reversed *Katcher* (36 NY2d 295) on other grounds without comment on this issue.

effect to the parties' private law as reflected in their Contract of Insurance *(Federal Ins. Co. v Atlantic Nat. Ins. Co.,* 25 NY2d 71, 77).

We conclude that the term "automobile" when used in ·Condition 6 does not include "motorcycle" and the first paragraph of Condition 6 does not limit Aetna's liability as excess insurance. Accordingly, Aetna is a coinsurer with Country-Wide on Daniel Wagoner's claim.

The order should be reversed.

SIMONS, J. (dissenting). The only issue on which the majority disagree with Special Term is over the application of proceeds payable under the respondent Aetna's policy which insured the vehicle of Donald Wagoner's father, Clifford.

Appellant Country-Wide Insurance insured the motorcycle which Daniel was driving at the time of the accident and if the vehicle were an ordinary car with four wheels, appellant's policy concededly would be primary and Aetna's policy excess. The majority, construing the contract, believe that Aetna intended to increase its exposure in the case of accidents involving nonowned motorcycles over what it would have in the case of nonowned automobiles. Thus, under the circumstances of this case, they construe Condition 6 of the Aetna policy as an agreement by Aetna to be liable as a coinsurer with Country-Wide for injury to Country-Wide's named insured while riding his motorcycle. I am unable to see the logic or desirability of such a construction and I prefer to rely on the determination of the Court of Appeals, made under different facts, that the contract term "automobile" in such clauses includes motorcycles (see *Matter of Askey [General Acc. Fire & Life Assur. Corp.],* 30 AD2d 632, affd 24 NY2d 937). Nor do I see any necessary conflict in the Special Term's result with this court's decision in *Insurance Co. of North Amer. v Godwin* (46 AD2d 154). In *Godwin* we were considering two policies both of which were purchased by the motorcyclist and listed him as the named insured. We applied the familiar rule that ambiguities in the policy should be construed in favor of the insured to afford him coverage. In this case there is no question of coverage for the accident. The issue is whether Aetna is a coinsurer with Country-Wide or liable for excess only. For these reasons and the reasons stated in the opinion of Special Term (88 Misc 2d 976) the order should be affirmed.

DILLON, GOLDMAN and WITMER, JJ., concur with CARDA-

MONE, J. P.; SIMONS, J., dissents in an opinion and votes to affirm the order.

Order reversed, with costs, and permanent stay of arbitration vacated.