OPINION OF THE COURT
Fuchsberg, J.
As it comes to us on appeal, this case presents what is essentially a controversy between two insurance carriers, Country-Wide Insurance Company and Aetna Casualty and Surety Company. The question it poses is narrow, but bears on the nature of the coverage provided by the automobile accident indemnification endorsement which, in compliance with the directives of section 167 of the Insurance Law, must form a part of each of the millions of motor vehicle liability policies in this State.
 Specifically, the issue is whether the term "automobile”, as it appears in the endorsement, is intended to include a "motorcycle”. We hold that it does. While we recognize that, without more, the literal meaning of the words "automobile” and "motorcycle” might suggest a contrary result (see Midwest Mut. Ins. Co. v Fireman’s Fund Ins. Co., 258 SC 533; but see Aetna Ins. Co. v Hurst, 2 Cal App 3d 1067), the circumstances and considerations we detail below compel the conclusion we have reached.
The applicable facts are undisputed. Daniel C. Wagoner was injured by a "hit and run” driver, a category of "uninsured motorist” against whom the Motor Vehicle Accident Indemnification Corporation Law protects (Insurance Law, § 600 et seq.). At the time, Wagoner was operating a motorcycle which he owned and on which he maintained a liability policy purchased from Country-Wide. Since Wagoner then resided in his father’s household, he also qualified as an "insured” under a policy Aetna had issued on his father’s car. As mandated by subdivision 2-a of section 167 *585 of the Insurance Law each policy contained an identically worded endorsement, Condition No. 6 of which read in pertinent part as follows:
"6. Other Insurance. With respect to bodily injury to an Insured while occupying an automobile not owned by the named insured, this insurance shall apply only as excess insurance over any * * * primary insurance * * * in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident * * * the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.”
Under the other insurance clause then, if a motorcycle falls within the endorsement’s reference to "automobile”, Wagoner, albeit an "insured” of Aetna, would at the time of his injury have been occupying an automobile not owned by his father, thus limiting Aetna’s exposure to that of an excess insurer. In that event, because Country-Wide, as issuer of the policy on the motorcycle is undeniably a primary insurer, Aetna would provide coverage only when Country-Wide’s had been exhausted. Conversely, if a motorcycle in this context may not be regarded as an automobile then Wagoner did not occupy "an automobile not owned by the named insured”, and Aetna would proportionately share the primary loss with CountryWide as a coinsurer.
Wagoner timely submitted his "uninsured motorist” claims and filed a demand for arbitration against Country-Wide. Urging that Aetna as a coinsurer should be liable pro rata for payment of any award to Wagoner, Country-Wide then commenced this proceeding for an adjudication to that effect and for a stay of arbitration. Special Term, after a hearing, rejected the petitioner’s contentions, holding that the policy issued by Aetna on the father’s car applied only as excess coverage. Accordingly, the court stayed the arbitration against Aetna and ordered Country-Wide to proceed to arbitration on Wagoner’s claim. However, the Appellate Division, one Justice *586 dissenting, disagreed with the disposition and entered an order vacating the stay of arbitration.[1]
In now reversing its order and reinstating that of Special Term, we lean heavily on the realities that surround the language to be construed. For we do not write on a blank page, but one that already records a history of judicial, legislative and administrative action.
The endorsement itself, not unlike other provisions in contracts offered to the public by the government-regulated insurance industry, is not the product of insurance company draftsmanship. The words of Condition No. 6 were chosen by the legislatively created Motor Vehicle Accident Indemnification Corporation with the approval of the State Superintendent of Insurance as part of the endorsement required by subdivision 2-a of section 167 of the Insurance Law (see Insurance Law, § 606, subd [b]). We, therefore, hearken back to the neutral sources that brought it into being for clues about the intended scope of Condition No. 6.
The purpose of the endorsement was to help effectuate the scheme of compulsory automobile liability insurance that has prevailed in New York State for the past quarter of a century by providing coverage to insured persons who suffer automobile accident injuries at the hands of financially irresponsible motorists (Ackerman v MVAIC, 36 Misc 2d 1048, affd 18 AD2d 307). The aim, to make the prescribed compensation available in all such cases, would appear to call for a policy of inclusion rather than exclusion in determining whom it covers (e.g., Matter of Neals v Allstate Ins. Co., 34 AD2d 265).
Significantly, although the endorsement itself is silent, the principal Insurance Law provisions from which it is derived confirm this policy as it applies to motorcycles. Under subdivision 2-a of section 167, each automobile liability policy must contain an endorsement making payable to an insured certain amounts "as damages from an owner or operator of an uninsured motor vehicle”. (Italics supplied.) And, according to subdivision a of section 601, "motor vehicle” encompasses *587 "motorcycle”. It is difficult to ascribe any reason for watering down the reach of the word "automobile” as it is used in the endorsement from what was intended by the phrase "motor vehicle” in the statute that forms the raison d’etre for the endorsement.
Nearly 10 years ago we held that the endorsement’s term "uninsured automobile” must be given the broader definition of the statute (Matter of Askey [General Acc. Fire & Life Assur. Corp.], 30 AD2d 632, affd 24 NY2d 937). Similarly, when used in the endorsement, the unqualified word "automobile” has been held to mean "motor vehicle” to permit recovery by an insured who, while operating a motorcycle, suffered injury at the hands of an uninsured motorist (Public Serv. Mut. Ins. Co. v Katcher, 44 AD2d 795, revd on other grounds 36 NY2d 295; cf. Matter of Sentry Ins. Co. [Amsel], 36 NY2d 291, 293-94).[2]
Our courts have thus announced that the broader language of the statute must be deemed to be incorporated in the endorsement. Had these decisions conflicted with rather than conformed to the over-all scheme for regulation and loss distribution, the Legislature, the superintendent and the Indemnification Corporation could have taken steps to rectify the problem. Of course, one cannot always peer unobstructed over legislative shoulders, but not a single one of the concerned governmental bodies registered any dissatisfaction. This acquiescence could hardly have escaped the notice of the sophisticated insurance industry, sensitive to the slightest legislative breeze that might unsettle the statistical basis of its calculations.
Reasons for this passiveness are not difficult to fathom. In a situation where totality of exposure remains unchanged, in the long run it matters little, if at all, whether two carriers share the risk as coinsurers or as primary and excess insurer respectively. The aggregate payment to the claimant will in the end be the same (see Matter of Public Serv. Mut. Ins. Co. v Cross, 38 AD2d 930) and, because each of the limited number of liability carriers licensed in the State writes a relatively large number of policies each year, there will be an averaging *588 out of the number of cases in which any particular carrier ends up as excess carrier or as coinsurer. In the unlikely event that there had been an adverse economic impact in the years since Askey and Katcher, the actuarial experience by which insurance companies live would have seen compensatory adjustment and reallocation of premiums and costs long before our decision today. But, even so, the consequences of a change of course at this time would in all likelihood only repeat whatever degree of disruption originally occurred.
Finally, we observe that, in the setting of this case, we have thought it best to place little reliance on the canons of construction. That is not to derogate the value of the many maxims that abound in that field. But, heeding the advice of two venerable legal scholars, because "there are still two opposing canons on almost every point” (Llewellyn, Common Law Tradition, p 521), it must be the circumstances above all that govern the application of particular words (Holmes, Theory of Legal Interpretation, 12 Harv L Rev 417). Here, we perceive that the good sense of the situation is clear; it is the case and not one canon or another that must control.
For these reasons, the order of the Appellate Division should be reversed and the order of Special Term reinstated.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed, with costs, and the order of the Supreme Court, Onondaga County, reinstated.

. Wagoner also owned a Chevrolet automobile insured by Aetna. He originally asserted the claim arising out of his accident under that policy, too. Both Special Term and the Appellate Division, however, found that the policy on the Chevrolet had been canceled prior to the accident (88 Misc 2d 976, 979; 57 AD2d 498, 503-504). Aetna, of course, was not aggrieved by the holding and Country-Wide, though aggrieved, took no appeal to this court. Since the third policy is no longer in the case, we have omitted so much of the earlier history of this litigation as is related to it.

. Insurance Co. of North Amer. v Godwin (46 AD2d 154) held that the term "automobile” as used in the exclusionary clause of the endorsement did not include motorcycle. There, confronted with a possible exclusion from coverage rather than, as here, a choice of which type of coverage applies, the court construed the policy strictly against the insurer.