143 P.2d 462

GENDRON v. CALVERT FIRE INS. CO.

No. 4785.

Supreme Court of New Mexico.
Nov. 19, 1943.

Joseph L. Smith and Mechem & Hannett, all of Albuquerque, for appellant.

Iden, Adams & Johnson, of Albuquerque, for appellee.

MABRY, Justice.

Plaintiff-appellant filed suit in the court below to recover on a contract of automobile collision insurance. Appellee company answered denying liability upon the ground that the policy relied upon had been cancelled. Judgment was rendered for appellee and this appeal follows. The following, in substance, constitutes the court's pertinent findings of fact and conclusions of law:

That on the 7th day of February, 1941, the plaintiff, H. E. Gendron, purchased from the defendant, Calvert Fire Insurance Company, a corporation, policy of insurance, which said policy provided for the insurance of plaintiff against damage and loss by collision upon his automobile, with a $25 deductible clause; that said agreement was entered into in the State of California and provided for coverage for a period of eighteen (18) months from date thereof; that on or about the 19th day of October, 1941, plaintiff, while driving his car suffered an accident which demolished the car and said car became a total loss; that on the 23d day of September, 1941, the defendant, Calvert Fire Insurance Company, a corporation, mailed to plaintiff a letter addressed to him at 38 Reconnaissance Squadron March Field,

California, the address contained in said policy.

The letter contained a notice that defendant company elected to cancel the policy, the contents of the letter being correctly contained in the stipulation filed by counsel herein; that for some reason this notice of cancellation was never received by the plaintiff; that there was no tender of unearned premium except as provided in the letter above referred to; that prior to the accident of October 19, 1941, plaintiff had suffered two other accidents and the loss sustained had been settled by an adjustor acting as agent of the defendant; that in the loss which occurred in Albuquerque, New Mexico, the plaintiff filed a proof of loss on or about the 1st day of March, 1941, giving his permanent address as Kirtland Field, Albuquerque, New Mexico; that in the loss which occurred in Denver, he also notified the adjustor on or about the 1st day of August, 1941, that his permanent address was Kirtland Field, Albuquerque, New Mexico. That plaintiff at all times continued to receive mail forwarded from his California address, March Field, and there was no endorsement requested, or appearing on the policy, showing a change of address.

That the car was totally demolished and the reasonable value thereof at the time of the accident was $650.

An additional finding of fact, which may be called a mixed finding of fact and conclusion of law, reads: "That defendant, Calvert Fire Insurance Company, complied strictly with the terms of said policy in giving notice of cancellation."

The Court thereupon concluded as a matter of law that the policy was duly canceled before the date of the accident. The cancellation clause of the policy reads:

"Cancellation. Cancellation of this policy shall be affected at the request of the insured immediately upon surrender thereof or upon written notice to the company stating when thereafter cancelation shall be effective. Cancelation may be effected by the company by giving five (5) days' written notice of cancelation to the Insured mailed to the Insured's address stated herein. Proof of such mailing shall be sufficient evidence of such notice."

"Upon surrender of this policy, the company shall refund (a) the excess of paid premium above the customary short rate premium for the expired term when cancelation is at the insured's request, or (b) the excess of paid premium above the prorata premium for the expired term when cancelation is made at the instance of the company."

There was an endorsement on the policy which reads as follows: "The assured under this policy is the above named insured and Commercial Credit Company and/or affiliated Companies and/or Subsidiaries. Loss, if any, to be adjusted with the insured though to be paid, subject to all the conditions of this policy, only to the Commercial Credit Company, for the account of all interests."

The notice of cancellation stipulated to by the parties reads as follows:

"Dear Sir:

"We elect to cancel our Policy No. 090—535—5813 Policy No. A–1001 issued to you on 2/7/41 and hereby give you notice thereof, as provided by the terms of said policy.

"The excess of paid premium above the pro-rata premium for the expired time (if not tendered) will be refunded on demand to the local office of the Commercial Credit Corporation, at San Bernardino, the additional assured, to which all payments are made for the account of all interests.
"Respectfully yours,

"Calvert Fire Insurance Company
"Riverside          Eugene E. Heaton,
                              Secretary"

The Commercial Credit Corporation applied the unearned premium to the insured Gendron's indebtedness to it. The said Commercial Credit Corporation's letter reads in part: "May I take this occasion to call your attention to the fact that Mr. Gendron is delinquent in his payments under his conditional sales contract, the total outstanding balance being $88.91 after allowance is made for return premium after cancelation of the policy. This amount is immediately due and payable," etc.

The assignments of error may be properly grouped under two points.

I. That the Court erred in holding, as a matter of fact, that the appellee company complied strictly with the terms of said policy in giving notice of cancellation; and in concluding as a matter of law that the policy was in fact cancelled at the date of the accident.

The Court erred, says appellant in discussing this point, in holding for the appellee company and against appellant because: (a) Said notice did not fix any time or date when the cancellation was to be effective. (b) No mention is made in said notice relative to surrender of the policy. (c) Said notice was contrary to the provisions of the policy and insufficient in respect to the tender of the excess premium above the pro-rata premium for the unexpired term, in that it is stated that it would be refunded on demand to the local office of the Commercial Credit Corporation instead of to the insured plaintiff, and was thereafter paid to the Commercial Credit Corporation and not to the insured. The words "on demand" are not used in the cancellation clause of the policy. (d) The notice was never received by the plaintiff. (e) Although the defendant knew the plaintiff's correct address the notice was mailed elsewhere.

II. That notice of cancellation was contrary to the provisions of the policy and insufficient in respect to the tender, or refund, of the excess premium unearned at the time of cancellation.

There is no merit to the contention that the notice given should have fixed any time or date when the cancellation became effective, absent a requirement of the policy to that effect. Cancellation becomes ef-

fective under the terms of the policy at the end of five (5) days after written notice is given by the company. See annotation in 35 A.L.R. page 899.

Appellant's point that no mention is made in the notice relative to the surrender of the policy is likewise without merit. The policy does not require that the notice of cancellation carry any mention of surrender of the policy. Such surrender has to do, rather, with the insured's right to a return of the unearned premium, hereinafter to be more fully noticed. See Summers v. Travelers Ins. Co., 8 Cir., 109 F.2d 845, 127 A.L.R. 1355.

Under the terms of the policy it is not necessary that the insured actually receive notice. So, it must be said that mailing is all that is required. Whether such notice be actually received by the insured is unimportant. Raiken v. Commercial Casualty Co., N.J.Sup., 135 A. 479; and Naify v. Pacific Indemnity Co., 11 Cal.2d 5, 76 P.2d 663, 115 A.L.R. 476. Where the insurer has strictly complied with the terms of the policy with reference thereto, failure to receive notice will not render the attempted cancellation ineffective. See Appleman on Automobile Insurance p. 476; Trinity Universal Ins. Co. v. Willrich, 1942, 13 Wash.2d 263, 124 P.2d 950, 142 A.L.R. 1; Frontier-Pontiac, Inc., v. Dubuque Fire & Marine Ins. Co., Tex.Civ. App., 166 S.W.2d 746.

The case of Long v. Home Indemnity Co., La.App., 169 So. 154, relied upon by appellant, is not in point. The facts involved are in many respects different. These differences we shall not undertake to here notice or discuss. The appellee company, as the trial court found, strictly complied with the terms of the policy in giving notice. There is nothing to show that at any time it had notice of any change of address on the part of appellant, and certainly no notice that appellant desired a correction or amendment of the policy to show a new permanent address. Appellee relies upon the case of Naify v. Pacific Indemnity Co., supra, as an indication of the proper rule to follow, and likewise of what the California court would recognize as a proper holding in a case where there had been strict compliance on the part of the company with the cancellation provision.

Notwithstanding the agent who adjusted and settled the two prior losses of appellant, the one of March 1, 1941, and the other of August 1, 1941, himself had notice of the present permanent address of appellant as being Albuquerque, New Mexico, there is nothing to show that the insurer ever had notice thereof. And, conceding that appellee had notice that at the time of such adjustments the then permanent address of appellant was as stated to the adjustor, still, there is nothing to show that appellant desired the company to recognize such a change of address, or that he had requested it to amend the policy theretofore written to show such change.

There is much reason to be advanced in support of a practise of embodying in the policy of insurance a permanent

address to which all necessary mail and notices may be sent to the insured. It is common knowledge that the insured, although having a permanent address in a place where the policy is issued, may travel widely and that he may be involved in accidents in places far removed from the place of his residence. These accidents are adjusted and the loss therefor paid, usually, in a place convenient to both the insured and the adjusting agency representing the company.

What would have been the result if notice of cancellation had been sent to the insured at his present Albuquerque address and he had not received it? He could very properly have complained that the cancellation was not effective because it was not attempted in strict compliance with the terms of the policy. This is not to say that the address of the policy might not be changed if properly brought to the attention of the company and a sufficient request made therefor, thereby indicating a clear intention that the insured would no longer rely upon contact with the insurer through letters mailed and to be forwarded from the address originally shown on the policy.

The policy expressly provides: "Changes. No notices to any agent or knowledge possessed by any agent or other person shall be held to effect a waiver or change in any part of this policy; nor estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part thereof." This clause of the policy clearly indicates that the address stated in the policy to which notices are to be sent cannot be changed except by endorsement upon the policy.

Even construing the policy strictly against the insurer, as the rule requires, yet it cannot be said that the language so employed and last above quoted is of doubtful meaning. Moreover, we can see nothing burdensome or unreasonable about this particular provision. Although the insured may be traveling from place to place, it is not disputed that he can, and the careful person usually does, leave his forwarding address at the address given in the policy, as the appellee, in fact, did; and the findings show that he received mail from the original address so given, in due course. Although he denies that he received this particular notice, we are not called upon to account for his failure to receive it. It is something that might just as easily have happened had the notice been mailed to his Albuquerque address.

On the other hand, to require the company to mail notice of cancellation to an address which may have come to the attention of an adjustor and which may or may not have been forwarded to the main office of the company and which, in any event, was without a request to adopt it, would be not only unreasonable and unfairly burdensome upon the company, but it would be in entire disregard of the terms of the policy itself, adding a new provision there-

in not stipulated for nor specifically requested. See Raiken v. Commercial Casualty Co., supra. "By the terms of the standard policy, mailing of notice is the determining factor in cancellation * * *". Appleman on Automobile Liability Insurance.

In the latter case it was stated [135 A. 480]: "We must deal with the policy as it is written and not as the plaintiff would have it modified. A court of law is powerless to give force to the contracts of parties except as they appear in the writings themselves."

■ Even had the address given in the policy been erroneous in the first instance, absent a showing of fraud sufficient to avoid the general rule, the insured should be held to the statements therein contained if it could be said that he had an opportunity of seeing and examining the policy, as he had here. Metzger v. Ætna Insurance Co., 227 N.Y. 411, 125 N.E. 814.

"The purpose of the particular provision specifying how notice should be given is of course to protect the company against changes of residence of the assured which it could not be expected to follow, while at the same time affording reasonable protection to the assured through the mail forwarding custom of the postal authorities." Werner et al. v. Commonwealth Casualty Co., 109 N.J.L. 119, 160 A. 547, 548.

And, employing the thought, and in part the language, used in the Raiken case, supra, "Whether the policy could have been reformed" to incorporate a correct, new or changed address "in a court of equity, is beside the point." He must stand upon his rights as they are made in his contract.

■ We are not intrigued by the suggestion of appellant that it would be against the public policy of the state to permit the operation of such rule as to notice. As was said in Trinity Universal Ins. Co. v. Willrich, supra [13 Wash.2d 263, 124 P.2d 955, 142 A.L.R. 1]: "There is no statute in this state which prescribes, limits, or restricts the manner of giving notice of cancellation of casualty insurance policies * * * and we are aware of no reason prompted by public policy which would prevent persons from voluntarily entering into a contract containing conditions such as those set forth in the cancellation clause of the policy here in question."

On the contrary, we find that we have by rule of court and by statute, in at least two instances, expressly authorized service of notice by mail, declaring the deposit thereof in the post office to be sufficient. This applies in the case of service of pleadings (Sec. 19-101(5) (b) of Rules of Civil Procedure, Comp.1941), and Comp. Laws of 1941, sec. 53-236, makes a like provision in relation to notice of dishonor as to commercial instruments and transactions.

■ There is likewise no merit to appellant's contention that there should have been a tender of the unearned premium before cancellation could become ef-

fcctive. And, under the circumstances of this case, no significance can attach to the fact that the refund of unearned premium was sent to the Commercial Credit Corporation and thereafter applied by it upon appellant's indebtedness.

While there may be some conflict of authority upon the question whether return of the unearned premium is a condition precedent to the cancellation of an insurance policy under a contract and conditions similar to those here presented, we believe the better rule is that adopted by the California court in Mangrum & Otter v. Law Union & Rock Ins. Co., 172 Cal. 497, 157 P. 239, L.R.A.1916F, 440, Ann. Cas.1917B, 907. And, moreover, it is agreed that this being a California contract, the holding of the courts of that state would be most persuasive, if not binding, upon the parties on this question, provided such holding be not contrary to some public policy of this state; and we find nothing indicating an infringement upon any such policy.

The refund provided for follows a "surrender of the policy", which has not yet occurred. The provision for it is stated in a separate part of the policy and has no relation, and is not made a condition precedent, to the right to cancel. All questions urged must be resolved against appellant.

Finding no error, the judgment is affirmed, and it is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and THREET, JJ., concur.