2007-NMCA-013

150 P.3d 982

**RODEO, INC., d/b/a "Cowboys", A New Mexico Corporation, Ron Cowdrey, Phyllis Cowdrey, Gene Ellis Hinkle, Hinkle Properties, LLC, Montgomery–Eubank Co., Ltd., a New Mexico General Partnership, and Rita Trujillo, Third Party Plaintiffs/Appellees/Cross Appellants**

v.

**COLUMBIA CASUALTY COMPANY, Third–Party Defendant/Appellant/Cross Appellee.**

**Nos. 25,648, 25,652.**

Court of Appeals of New Mexico.

Oct. 27, 2006.

Certiorari Denied, No. 30,113, Jan. 19, 2007.

L. Helen Bennett, Steven Vogel, Bryan Query, Albuquerque, NM, for Third Party Plaintiffs/Appellees/Cross Appellants.

Yenson, Lynn, Allen & Wosick, P.C., Patrick D. Allen, April D. White, Albuquerque, NM, for Third–Party Defendant/Appellant/Cross Appellee.

## OPINION

BUSTAMANTE, Chief Judge.

{1} This interlocutory appeal involves an issue of first impression: whether an insurer is required to return unearned premiums before cancellation of an insurance policy financed by a premium finance company can be effective. We decide that NMSA 1978, § 59A–45–11 (1984) requires the return of unearned premiums. We therefore affirm the district court's judgment that the policy remained in effect until the insurer returned the unearned premiums. Because of our disposition, we do not reach the merits of the conditional cross-appeal, which concern the notice requirements for additional insureds.

## FACTS AND PROCEDURE

{2} Appellee/Cross–Appellant Rodeo, Inc. (Rodeo) owns and operates a country-western bar in Albuquerque, New Mexico, named Cowboys. In September 2000, Rodeo sought commercial general liability and liquor liability insurance coverage for Cowboys through an insurance broker, Northern Insurance (Northern). Northern was unable to place Rodeo's risk with an authorized New Mexico insurer, and therefore sought surplus lines insurance. *See* NMSA 1978, § 59A–14–2 (1991) and § 59A–14–3 (1993) (providing that surplus lines insurance may be placed with a qualified foreign insurer not otherwise authorized to sell insurance in New Mexico when the particular amount or type of insurance cannot be obtained from insurers authorized to do business in New Mexico). Northern obtained a quote from Skanco International, Ltd. (Skanco), a wholesale surplus lines insurance broker, for an insurance policy issued by Columbia Casualty Company (Columbia). After Rodeo accepted Skanco's quote, Columbia issued a policy that became effective on December 1, 2000. Gene Hinkle, who leased the property on which Cowboys is located, and Rita Trujillo, who owned Cowboys' liquor license, were both named by Rodeo as additional insureds in endorsements to the Columbia policy.

{3} Instead of paying the annual premium in a lump sum, Rodeo entered into an insurance premium finance agreement with a company called Premium Finance Specialists, Inc. (PFS). In a premium finance agreement, a premium finance company pays the premium in full to the insurer and the insured makes payments to the premium finance company for the amount advanced to the insurer. *See* NMSA 1978, § 59A–45–2 (1984). In the agreement, the insured gives the premium finance company a power of attorney to cancel the policy if the insured defaults on a payment; however, in New Mexico, cancellation pursuant to such agreements is controlled by specific statutes governing premium financing. *See* § 59A–45–11. According to the financing agreement between Rodeo and PFS, PFS agreed to pay

the full $7,998.98 annual premium to Columbia. Rodeo agreed to make an initial payment of $2,305.73 to PFS, followed by nine monthly payments of $670.71. The premium finance agreement between PFS and Rodeo appointed PFS as Rodeo's attorney-in-fact with the specific authority to cancel the Columbia policy on behalf of Rodeo in the event Rodeo defaulted on its payment obligations to PFS. Neither Skanco nor Columbia were parties to the premium finance agreement or had an agency relationship with PFS.

{4} The common policy conditions of the Columbia policy contained a cancellation section, which provided that the first named insured (Cowboys) "may cancel this policy by mailing or delivering to us advance written notice of cancellation." The cancellation section also provided: "Notice of cancellation will state the effective date of cancellation. The policy period will end on that date." The policy also stated:

If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

{5} In January and February 2001, Rodeo was late in making payments to PFS under the financing agreement and PFS sent Rodeo notices of intent to cancel. Rodeo made its payments and avoided cancellation. On March 12, 2001, PFS sent Rodeo another notice of intent to cancel because Rodeo's March payment was past due. The notice stated that if PFS did not receive payment by March 22, 2001, PFS would cancel Rodeo's insurance policy with Columbia. The notice stated: "MAKE YOUR PAYMENT NOW TO KEEP YOUR INSURANCE IN FORCE. THIS IS THE ONLY NOTICE YOU WILL RECEIVE BEFORE CANCELLATION IS MADE." On March 29, 2001, PFS sent Rodeo a notice that pursuant to its power of attorney PFS would cancel Rodeo's insurance effective April 1, 2001, unless payment was received. The notice of cancellation, which was also sent to Northern and Skanco, instructed the insurer to forward gross unearned premiums to PFS "promptly for credit to the insured's account." Rodeo made its March payment on April 3, 2001, and on May 11, 2001, also tendered payments for April and May, which were accepted by PFS.

{6} By May 9, 2001, Northern received a cancellation endorsement from Skanco, which indicated that the policy was cancelled for non-payment and that there was "a 90% of pro rata return premium of $4604.00." On May 15, 2001, PFS sent Skanco a request for reinstatement, which stated: "If the insurance is to remain cancelled, please forward PFS the return premium promptly."

{7} On May 20, 2001, a patron died after being escorted from Cowboys. On May 22, 2001, Columbia rejected PFS's request to reinstate the insurance policy. A wrongful death action was filed against Rodeo by the patron's estate. Rodeo submitted the defense and indemnification of the claim to Columbia, which was rejected on grounds that the policy had been cancelled by Rodeo's attorney-in-fact on April 1, 2001. Columbia did not refund any of the unearned premium until June 11, 2001, when Skanco returned to Northern the unearned balance of premiums paid. Rodeo did not receive a refund for the unearned premium from Northern until November 9, 2001. Our review of the record reveals no indication that PFS ever received the balance of the unearned premium.

{8} Rodeo, Hinkle, and Trujillo filed third-party complaints against Columbia, alleging that Columbia had a duty to defend and indemnify them in the wrongful death action, and also claimed breach of contract, breach of duty of good faith and fair dealing, and violations of the New Mexico Insurance Code. The parties filed cross-motions for summary judgment on Columbia's duty to defend. After a hearing, the district court initially granted Columbia's motion for summary judgment against Rodeo, concluding that Columbia had no duty to defend Rodeo. The district court found that Rodeo's insurance policy was cancelled by Rodeo's attorney-in-fact on April 1, 2001, the date stated in the notice of cancellation, and was never reinstated. The district court also found that Rodeo had no reasonable expectation of insurance coverage after April 1, 2001. As to

Hinkle and Trujillo, the district court denied Columbia's motion for summary judgment, finding under the doctrine of reasonable expectations that notice of cancellation was required as to Hinkle and Trujillo, and a question of fact remained as to whether they received proper notice. All parties filed motions for reconsideration. Following argument, the district court reversed its previous order. The district court found that Columbia did not have a duty to notify Hinkle and Trujillo of the cancellation of the policy. The district court ruled, however, that Rodeo's policy with Columbia remained in effect until the unearned premium was returned by Skanco, a decision which meant that Rodeo, Hinkle, and Trujillo were all covered at the time of the incident underlying the wrongful death action. The district court certified its order for interlocutory appeal, which was granted by this Court. *See* NMSA 1978, § 39–3–4 (1999); Rule 12–203 NMRA.

{9} In this interlocutory appeal, Columbia seeks review of the district court's ruling that cancellation of an insurance policy by a premium finance company, acting pursuant to a power of attorney from the insured, is not effective until the unearned premium is returned to the insured. Hinkle and Trujillo also filed a conditional cross-appeal to determine whether the district court erred in ruling that Hinkle and Trujillo were not entitled to notice of the policy's cancellation. Because we affirm the district court's ruling that the policy remained in effect until Columbia refunded the unearned premium on June 11, 2001, we do not address the merits of the cross-appeal. Although the parties dispute whether this Court should review the issue of whether Rodeo had a reasonable expectation of coverage after April 1, 2001, we do not need to address this issue based on our proposed disposition.

## DISCUSSION

{10} The only issue we address in this appeal is whether, under our statutory provisions for cancellation of an insurance policy by a premium finance insurance company, the date of cancellation is rendered ineffective by an insurer's failure to return unearned premiums. Columbia argues that this Court should reverse the district court's

interlocutory order in part and hold that the cancellation of an insurance policy by a premium finance company acting pursuant to a power of attorney is effective on the date specified in the notice of cancellation and not on the date the unearned premium is returned to the insured. In response, Rodeo argues that the return of the premium took place well after the alleged cancellation, and after the incident that is the subject of the underlying lawsuit. Rodeo urges us to affirm the interlocutory order and hold that the cancellation of an insurance policy by a premium finance company acting pursuant to a power of attorney is not effective until the unearned premium is returned to the insured. Accordingly, our review is limited to whether the Columbia policy was in effect at the time of the incident that led to the wrongful death suit.

## STANDARD OF REVIEW

{11} This appeal presents a question of law which this Court reviews de novo. *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (stating that the grant or denial of summary judgment is reviewed de novo). The interpretation of insurance contracts and statutes also presents questions of law we review de novo. *Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 60, 123 N.M. 752, 945 P.2d 970 (stating that interpretation of an insurance contract is a matter of law appellate courts review de novo); *Meyers v. W. Auto*, 2002–NMCA–089, ¶ 13, 132 N.M. 675, 54 P.3d 79 (stating that interpretation of a statute is a question of law reviewed de novo).

## New Mexico Insurance Premium Financing Law

{12} Columbia's appeal requires us to construe the provisions of the New Mexico Insurance Premium Financing law. *See* NMSA 1978, §§ 59A–45–1 to –16 (1984, as amended through 1999). Cancellation of an insurance policy by a premium finance company for default is controlled by express statutory provisions, which require both premium finance companies and insurers to follow certain steps to effect cancellation. *See* § 59A–45–11. Those provisions are:

A. When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is made in accordance with this article.

B. Not less than ten (10) days written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within the ten-day period.

C. After expiration of the ten-day period, the premium finance company may thereafter request, in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer or its licensed agent a notice of cancellation, and the insurance contract shall be cancelled as if such notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a notice of cancellation to the insured at his last known address.

D. All statutory, regulatory and contractual restrictions providing that the insurance contract may not be given to a governmental agency, mortgagee or other third party, shall apply where cancellation is made under this section. The insurer or its licensed agent shall give the prescribed notice on behalf of itself or the insured to any governmental agency, mortgagee or other third party on or before the tenth (10) [10th] business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation, taking into consideration the number of days' notice required to complete the cancellation.

E. Whenever an insurance contract is cancelled in accordance with this section, the insurer or its licensed agent shall return whatever gross unearned premiums are due under the insurance contract to the premium finance company effecting the

cancellation for the account of the insured or insureds.

F. In the event that the crediting of return premiums to the account of the insured results in a surplus over the amount due from the insured, the premium finance company shall refund such excess to the insured provided that no such refund shall be required if it amounts to less than one dollar ($1).

{13} Rodeo argues that subsection (A) of the statute requires that all of the conditions in subsections (B) through (F) in Section 59A–45–11 be met prior to cancellation, including the return of unearned premiums in subsection (E). In contrast, Columbia argues that all statutory obligations for cancellation were met once PFS fulfilled the notice provisions of subsection (C), and that subsection (E) was not a condition precedent to cancellation.

■ {14} According to 59A–45–11(C), Columbia argues, cancellation by a premium finance company under these circumstances is as if such notice of cancellation had been submitted by the insured himself. *See* § 59A–45–11(C) (providing that a premium finance company may request cancellation in the name of the insured "and the insurance contract shall be cancelled as if such notice of cancellation had been submitted by the insured himself"). According to the terms of the policy, if Rodeo cancelled, the policy period would end on the date stated in the notice of cancellation. In the notice of cancellation, PFS designated that cancellation would be effective April 1, 2001. Because cancellation of the policy by PFS was equivalent to cancellation of policy by Rodeo itself, Columbia contends, the policy was cancelled on April 1, 2001, as soon as PFS met its statutory obligations to provide notice under subsection (C). Thus, nothing further was required of Columbia to make cancellation effective.

■ {15} Before assessing Columbia's statutory arguments, we first note that we are constrained in our ability to interpret the cancellation provisions of Section 59A–45–11 by the rules of statutory construction. In determining whether strict compliance is required in the interpretation of a statute, "we

must ascertain the intent of the legislature and analyze whether this intent would be frustrated by anything less than strict compliance." *Green Valley Mobile Home Park v. Mulvaney*, 1996–NMSC–037, ¶ 11, 121 N.M. 817, 918 P.2d 1317. We observe that by passing the Insurance Premium Financing Law, the legislature intended to regulate premium financing in New Mexico. *See* §§ 59A–45–1 to –16. In general, premium financing legislation addresses abuses in premium financing; its purpose is to protect the insured and potential innocent tort victims from summary, unannounced cancellation of a policy by a premium finance company and an insurer. *See Gov't Employees Ins. Co. (GEICO) v. Taylor*, 270 Md. 11, 310 A.2d 49, 52 (1973). Thus, premium financing statutes generally provide that an insurance contract can be cancelled by a premium finance company only through strict compliance with procedures mandated by statute. *See* Frank A. Valenti, Comment, *Insurance Premium Financing*, 19 Buff. L.Rev. 656, 666 (1970); *see also* 45 CJS *Insurance* § 515 (1993) ("As the statutory requirements are mandatory, and strict adherence to the mandated procedure is necessary, the insurance company may not consider the policy canceled if defects exist in the cancellation process[.]" (footnotes omitted)).

{16} In Section 59A–45–11, our legislature dictated that specific procedures must be followed when a premium finance company cancels an insurance policy. Those procedures include a requirement that unearned premiums be returned to the premium financing company. Subsection (E) provides:

> E. Whenever an insurance contract is cancelled in accordance with this section, the insurer or its licensed agent shall return whatever gross unearned premiums are due under the insurance contract to the premium finance company effecting the cancellation for the account of the insured or insureds.

By its own terms, subsection (E) makes return of unearned premiums a mandatory procedure when an insurance policy is cancelled by a premium finance company.

{17} We observe that Columbia did not return the unearned premium to the premium finance company as directed in Subsection E. Columbia concedes that it sent the refund of unearned premiums to Northern instead of directly to PFS as is required by Subsection E and argues that the record does not reflect that PFS raised any objections to this. We agree with Columbia that sending the refund to Northern makes no difference in our analysis because the issue rests on the failure of Columbia to refund the unearned premium to anyone for over two months after receipt of the notice of cancellation from PFS. Subsection E provides that unearned premiums returned to the premium financing company are "for the account of the insured." Section 59A–45–11(E). Given this language and the policy behind the Insurance Premium Financing Law, to protect the insured, we construe Columbia's violation of Subsection E in light of its effect on the insured.

{18} Columbia urges us not to give such a strict construction to subsection (E). In Columbia's view, the only way to read subsection (E) is as an independent requirement unrelated to cancellation. We are unable to do so.

■ {19} A fundamental rule of statutory construction is that all provisions of a statute must be read together to ascertain legislative intent. *Martinez v. Sedillo*, 2005–NMCA–029, ¶ 9, 137 N.M. 103, 107 P.3d 543. Not only is the language in subsection (E) mandatory, but the cancellation provisions begin with subsection (A), which provides:

> A. When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, *the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is made in accordance with this article.*

Under Columbia's reading, subsection (A) does not apply to subsection (E). Section 59A–45–11(A) (emphasis added). However, individual portions of a statute cannot be viewed in isolation but must be interpreted by reference to the statute as a whole so that no part is rendered superfluous. *See Gordon*

*v. Sandoval County Assessor,* 2001–NMCA–044, ¶ 19, 130 N.M. 573, 28 P.3d 1114; *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers,* 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236. The only way to construe the cancellation provisions as a whole is to read subsection (A) in conjunction with subsection (E). In addition, the legislature did not designate a period of time in which to allow the insurer to return the unearned premiums after cancellation. Thus, the plain language of the statute indicates that subsection (E) is not optional or aspirational, as Columbia would like us to conclude. Rather, it is more likely that the legislature intended to make subsection (E) a requirement that must be met by the insurer before cancellation is valid.

{20} By construing the statute as a whole, we also recognize the importance of subsection (F). *See Cummings v. X–Ray Assocs. of N.M.,* 1996–NMSC–035, ¶ 45, 121 N.M. 821, 918 P.2d 1321 (noting that statutes must be read in their entirety and all provisions construed together to create a harmonious whole). Subsection (F) requires the premium finance company to refund excess return premiums to the insured. This requirement benefits the insured, providing "an added protection ensuring notice to the insured." *See Bowman v. State Roofing Co.,* 365 S.C. 112, 616 S.E.2d 699, 704 (2005). Thus, the subsections that mandate the return of the unearned premiums are not independent requirements unrelated to the cancellation procedures, but mandatory components of a legislative scheme intended to protect the insured by ensuring that notice is provided when an insurance policy is cancelled by a premium financing company. Such notice, and the return of premiums, allows the insured to take steps to protect itself by acquiring other insurance. We observe that our holding today could be interpreted to mean that a policy is not effectively cancelled until the premium finance company has complied with Subsection F and returned the excess to the insured. *See* § 59A–45–11(F). However, the posture of this case does not present that question; thus, we express no opinion regarding this issue. Because the legislature provided that cancellation by a premium finance company can only occur through strict compliance with the statute, we conclude that an insurer's compliance with subsection (E) is mandatory for cancellation to be effective.

## New Mexico Case Law

{21} Our construction of the statute does not conflict with New Mexico case law, which has not yet addressed the cancellation provisions at issue. Arguing to the contrary, Columbia points to *Gendron v. Calvert Fire Insurance Co.,* 47 N.M. 348, 143 P.2d 462 (1943). In *Gendron,* our Supreme Court was presented with the question of whether the return of an unearned premium was a condition precedent to cancellation of an insurance policy, a question that was decided prior to adoption of the Insurance Premium Financing Law. *Id.* at 356, 143 P.2d at 466. Instead of being controlled by statutory language, the Supreme Court was called upon to construe the contractual language of a policy. *Id.* at 351, 143 P.2d at 463. The *Gendron* Court concluded that, as long as the insurer complied with the terms of the policy, the policy did not require an affirmative act on the part of the insurance company as a condition precedent for making effective the cancellation of the policy, including the return of the unearned premium. *Id.* at 356, 143 P.2d at 466. Columbia argues that *Gendron* not only controls in this case, but was reaffirmed in *Russell v. Starr,* 56 N.M. 49, 51, 239 P.2d 735, 736 (1952) (holding that, in the absence of statutory or policy provisions, no particular form of notice is required as long as it gives the insured a definite understanding that a policy is cancelled).

{22} We have no quarrel with Columbia's proposition that *Gendron* presents a general rule that, absent an express statutory provision, the return of an unearned premium is not required to effect cancellation under New Mexico law. However, *Gendron* does not apply under these circumstances.

{23} The analysis in *Gendron* and *Russell* turns on the language of the policy and does not address the statute at issue here, which was passed many years later. *See Padilla v. State Farm Mut. Auto. Ins. Co.,* 2002–NMCA–001, ¶ 10, 131 N.M. 419, 38 P.3d 187 (observing that cases are not authority for

propositions not considered). Because we are faced with a statute that provides specific, exclusive procedures that must be met for cancellation under premium finance arrangements, we cannot rely on *Gendron* to conclude that the return of an unearned premium is not required under these circumstances. In effect, Columbia asks us to ignore the statute. However, the Insurance Premium Financing Law requires a different analysis because it provides statutory obligations for cancellation in clear and unambiguous terms. We must read those obligations into the policy. *See Bauer v. Bates Lumber Co., Inc.,* 84 N.M. 391, 393, 503 P.2d 1169, 1171 (Ct.App.1972) ("If there is a conflict between statutory provisions on the one hand, and the provisions of the policy on the other, the former must, on public policy grounds, prevail.") Section 59A–45–11 requires notice of cancellation and requires refund of any unearned premium in order for a premium finance company to cancel insurance contracts, regardless of policy language to the contrary.

## Other Jurisdictions

{24} Our construction of the statute is supported by the decisions of other states faced with interpreting a similar statute. We find authority for strictly interpreting our statute in the Maryland Court of Appeals' decision in *GEICO,* 310 A.2d at 53. Construing language in a premium financing act that was substantially similar to New Mexico's, including a subsection almost identical to our subsection (E), the *GEICO* court determined that cancellation of an insurance policy by a premium finance company does not become operative until the insurer returns the unearned premium to the premium finance company. *Id.* In so holding, the *GEICO* court recognized that strict compliance with statutory requirements was necessary to achieve the benefits of the statute and was consistent with that of other states that had enacted premium finance laws. *Id.* at 53 & n. 7.

{25} Similarly, the South Carolina Supreme Court held that the return of an unearned premium was required by statute to make cancellation valid in *Bowman,* 616 S.E.2d at 705. In *Bowman,* the court was faced with interpreting the following provision: "Whenever an insurance contract is canceled, the insurer shall return whatever gross unearned premiums are due under the insurance contract to the premium service company which financed the premium for the account of the insured." *Id.* at 704. The *Bowman* court determined that the statute provided the exclusive means for cancellation of an insurance contract by a premium finance company, and that any violation of the section of the statute invalidated cancellation. *Id.* Because the insurer did not refund the unearned premium, the insurer did not comply with the statutory requirements, and the cancellation was invalid. *Id.* Thus, the return of unearned premium was part of the insured's obligation under the statute and a condition precedent to an effective cancellation. *Id.*

{26} Columbia argues that this Court should not rely on *GEICO* because the Maryland legislature subsequently changed its legislation. Columbia urges us to disregard *GEICO* because the statutory changes indicate that the court got it wrong. Although we acknowledge that the Maryland legislature made several changes to its statute after *GEICO,* we are not persuaded by Columbia's argument. The Maryland legislature amended its statute to provide that unearned premiums must be returned to the premium finance company "within a reasonable time not to exceed 60 days after the receipt by the insurer of the notice of cancellation, or after the completion of any payroll audit necessary to determine the amount of premium earned while the policy was in force." *Great Sw. Fire Ins. Co. v. Huss,* 49 Md.App. 447, 433 A.2d 1169, 1174 (Ct.Spec.App.1981) (describing amendments to Maryland's premium finance law). Not only did the Maryland legislature substantially change the subsection that was similar to our subsection (E), but it added the phrase "effective as of the date specified in the notice" after the word "cancelled" in the subsection that was similar to our subsection (C). *Id.* at 1175. Thus, the amended subsection stated that, upon receipt of a cancellation notice by the insurer, "the insurance contract shall be cancelled *effective as of the date specified in the notice* as if the

aforesaid notice of cancellation had been submitted by the insured himself." *Id.* at 1175 n. 11 (emphasis added). Although Columbia urges us to construe our statute in light of Maryland's subsequent changes to a similar statute, we decline to do so. If our legislature amends Section 59A–45–11 by adding similar provisions, or by expressly directing that the return of unearned premiums is not required prior to cancellation, we would be able to reach a different result. But until the legislature has spoken, we are constrained to construe the statutory provisions for cancellation strictly.

{27} Although Columbia maintains that *GEICO* is contrary to the weight of authority from other jurisdictions, we are not persuaded. Columbia's strongest support for interpreting a statute similar to ours as not requiring a return of unearned premium is an unpublished opinion from a lower court in Connecticut. *See Colagiovanni v. Premium Fin. Specialists, Inc.,* No. CV 950370642S, 1996 WL 457006 (Conn.Super.Ct. July 22, 1996). We are not inclined to give an unpublished opinion from a lower court more persuasive authority than *GEICO* and *Bowman.*

{28} Further, we are not persuaded by the other authority cited by Columbia. While Columbia claims that most jurisdictions do not require the return of unearned premiums, the treatise and cases upon which Columbia relies do not involve the interpretation of specific statutory provisions that mandate the return of unearned premiums for cancellation by a premium finance company. *See* 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 32:62 (3d ed.1995) (discussing the rule that in absence of a statute the return of unearned premium is not required when the insured cancels in accordance with the terms of the insurance policy); *Coe v. Farmers New World Life Ins. Co.,* 209 Cal.App.3d 600, 257 Cal.Rptr. 411 (1989) (discussing an insurance contract); *Hardware Mut. Cas. Co. v. Beals,* 21 Ill. App.2d 477, 158 N.E.2d 778 (1959) (discussing the terms of an insurance policy); *Country–Wide Ins. Co. v. Wagoner,* 57 A.D.2d 498, 395 N.Y.S.2d 300 (N.Y.App.Div.1977) (discussing neither a premium finance agreement nor a statutory provision for cancellation), *rev'd on other grounds by* 45 N.Y.2d 581, 412 N.Y.S.2d 106, 384 N.E.2d 653

(1978); *Hayes v. Hartford Accident & Indem. Co.,* 274 N.C. 73, 161 S.E.2d 552 (1968) (discussing the express provisions of the insurance policy). Therefore, we reject Columbia's argument that the weight of authority from other jurisdictions requires us to interpret our statutory provisions contrary to the legislative intent to require the return of unearned premiums before cancellation becomes effective.

**Policy**

{29} In its present form, our statute mandates that an insurer must return unearned premiums. Section 59A–45–11(E). Subsection (A) specifically provides that the insurance contract shall not be cancelled by a premium finance company unless such cancellation is made in accordance with this article. If all provisions of the statutes are not followed, the policy is not cancelled.

{30} Construing the statute to require strict compliance is the best way to realize legislative intent. The statute provides an incentive to insurers to return unearned premiums promptly to accomplish cancellation, which protects an insured in the event the insurer delays for many weeks. Although Columbia argues that it returned the unearned premium within a reasonable time, we disagree. The refund to Northern was not made until almost two and one-half months after cancellation, and almost three weeks after the incident that gave rise to the wrongful death action. Columbia offers no explanation for the delay. It was Columbia's independent decision not to return the premium until June 11, 2001, which permitted the policy to be operative at the time of the incident on May 20, 2001. *Accord GEICO,* 310 A.2d at 54.

{31} Columbia argues that insureds or their attorneys-in-fact should be able to cancel their insurance effective immediately by notifying the insurer of the cancellation. However, the legislature has recognized that the relationships between parties are different when a premium finance company is involved, which is why the legislature created a different rule when a premium finance company cancels pursuant to a power of attorney. While it is true that when a premium finance company cancels an insurance contract the insurance contract shall be can-

celled as if by the insured, the statute also requires an insurer to return unearned premiums. *See* 59A–45–11. The justification for allowing cancellation by an insured to become effective immediately applies to prevent an insurer from collecting additional premiums, while not providing coverage. In a premium finance arrangement, the insurer already has the premium. There is no justification for allowing the insurer to keep the premium if the insurer does not intend to provide coverage, which is why the statute imposes a duty on insurers to return the premium to the premium finance company.

{32} According to the statute, cancellation is not effective until it is made in accordance with all statutory provisions for cancellation. The statute provides that Columbia cannot retain unearned premiums, while also denying coverage. Thus, the effect of the statute is to require an insurer to return the premium promptly so that the insured can protect its interests by purchasing other insurance. We do not think this result unduly burdens the insurer, which simply must return the premium to effect cancellation. Read in this way, the statute also promotes important public policy considerations by protecting other insureds and innocent accident victims.

{33} Because Columbia does not show that it complied with the provision of the law requiring the return of unearned premiums prior to cancellation, we find that the court below was correct in its holding that the policy in question was in full force at the time of the accident and was not cancelled until June 11, 2001.

CONCLUSION

{34} Because Columbia failed to meet the requirement of subsection (E) of Section 59A–45–11 that it refund unearned premiums, cancellation was invalid under subsection (A) of the statute. We therefore affirm the district court's judgment and remand for proceedings consistent with this opinion.

{35} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and CELIA FOY CASTILLO, Judges.